F. B. Ryan *v.* John Q. A. Freeman et al.

Husband and wife: curtesy.—By the common law, the husband was tenant by the curtesy, where the wife, at any time during the coverture, was seised in fact of an estate of inheritance, and had issue by the husband, born alive and capable of inheriting the estate as her heir; the right of tenancy by the curtesy is secured to the husband by the sixth section of the Married Woman's Law of 1846, upon the same terms as it existed at common law; and hence, if there be no issue of the marriage, the husband is not entitled to curtesy in his wife's lands, held under that act. See 4 Kent, 28.

Error to the Circuit Court of Marshall county. Hon. P. T. Scruggs, judge.

*Walter* and *Scruggs*, for plaintiff in error.

*Clapp* and *Strickland*, contra.

Smith, C. J., delivered the opinion of the court.

This action was brought in the Circuit Court of Marshall, by the defendants in error, to recover a certain tract of land, to which they asserted title as the heirs at law of Mrs. Ryan, deceased, the late wife of F. B. Ryan, the defendant in possession. The jury returned a special verdict, in which are set forth the facts of the case, upon which judgment was entered for the plaintiffs, and the defendant prosecuted this writ of error.

The facts stated in the special verdict are, in effect, as follows. Mrs. Ryan, under whom the defendants in error claim, and F. B. Ryan, the defendant below, intermarried in 1855. Mrs. Ryan died in April, 1856: she died intestate, childless, and without ever having had issue of the marriage born alive, and capable of inheriting. When she died, she was seised and possessed, in fee simple, of the land in controversy. The defendants in error were the brothers and sisters of the decedent; and as such were her heirs at law; and the plaintiff in error was in possession of the premises when the suit was instituted.

Upon these facts it is insisted that the plaintiff in error, by operation of the statute, was vested with a life estate in the land in controversy. And hence that judgment should have been rendered for him in the court below.

Tenancy by the curtesy, occurs where a man marries a woman who is seised, at any time during coverture, of an estate of inheritance, and has by her issue born alive, and which was capable of inheriting the same estate as her heir. By the common law four things were requisite to the existence of this estate, to wit, marriage, actual seizin of the wife, issue, and death of the wife. 4 Kent, 28.

Here there was no issue born of the marriage, which was capable of inheriting the land as the heir of Mrs. Ryan. It is not, therefore, to be controverted, that according to the common law, the plaintiff in error was not entitled to a freehold estate in the land as tenant by the curtesy.

But it is contended that the statute has enlarged the rights of the husband, in regard to the lands and tenements of the wife, of which she shall die seised in fee simple. That it was the manifest intention of the legislature, in the enactment of the statutes in regard to the rights of married women, to give to the husband, in all cases, an estate of freehold analogous to the tenancy by the curtesy, in the lands of which the wife shall die seised in fee simple.

This position, and the argument in support of it, seem to be equally unfounded.

The sixth section of the Act of the 28th of February, 1846, contains the following provision, to wit: " If any married woman shall die seised and possessed of real estate or freehold (of inheritance), acquired under the provisions of the act (the Married Woman's Law), to which this is an amendment, her husband, surviving her shall be entitled to tenancy of the same by curtesy, as in other cases."

It is upon this provision, and what is assumed to be the general spirit of the above act, and of the Act of 1839, of which it is an amendment, that the assumption and argument of counsel are based. It is said that, without the insertion of the provision above quoted, the husband would have been entitled to curtesy, on precisely the same conditions, that he is now entitled to it, if this pro-

vision be held to have no other object or effect than to declare what the existing law was on the subject. That upon such a construction, the provision is unmeaning and useless; which is not to be tolerated, if one can be adopted which will give to the provision an operation and effect, consistent with the objects of the legislature on the subject. And hence, it is contended that the provision is not to be construed as defining the conditions upon which the surviving husband is to be entitled to his curtesy in the real property acquired by the wife, under the provisions of the first section of the Act of 1839; but as defining the quality and quantity of the estate to which he shall be entitled in the wife's lands, in the event of his surviving her. In other words, that it was the intention of the legislature to give to the surviving husband, in all cases, an interest in the lands of which the wife should die seised in fee simple, as similar in quality and quantity to the estate held by a tenant by the curtesy; and in effect, to abolish the common law requisite of birth of issue of the marriage, which was capable of inheriting. And further, that this construction is just and reasonable in itself; as the husband would thereby, to some extent, be indemnified for the depriving him of the usufruct of the land during coverture; and is in nowise opposed to the policy of the acts for the protection and preservation of the rights of married women.

But the intention of the legislature is too evident; the language is too plain to admit of this construction. We are bound to presume that the legislature understood the character and nature of a tenancy by the curtesy, and the conditions on which it depended; that the terms employed were used understandingly, in their appropriate legal sense. When, therefore, the legislature declared, that the surviving husband should be entitled to curtesy in the lands of the deceased wife, acquired under the provisions of the first section of the Act of 1839, it had in view all of the conditions on which, at common law, tenancy by curtesy depended. If it had been its intention to attach to the fact of marriage, the right to a life estate in the husband, to the lands of the wife, in the event of his surviving her, it would have been quite as easy to have said so, as to have adopted the language which it did.

Further, a *feme covert,* under the first section of the Act of 1839,

has a right to acquire real property by devise, gift or purchase, " in her own name, and as of her own property."

If, therefore, according to the true construction of this section, the real estate acquired, under its provisions, by a married woman, was held by her as separate estate, to which the marital rights of the husband did not attach, it is clear that, before the passage of the Act of 1846, the husband's curtesy did not exist as to the lands of which the wife died seised, which were thus acquired and held by her.  And this seems to have been the construction which the legislature adopted, as the provision of the sixth section of the act last above referred to, which we have before quoted, refers exclusively to acquisitions of real property by married women, under the provisions of the Act of 1839.   And the fact that nothing is said, in said section, in regard to lands owned by *femes covert* at the time of their marriage, nor in reference to lands subsequently acquired by descent, gives great force to the supposition that the ' legislature acted on that construction; as it could not have been matter of doubt with the legislature, that such lands were subject to the husband's curtesy.   Hence, assuming that the Act of 1839 was so construed by the legislature, the object of the provision becomes evident, and the reason plain, why its very phraseology was adopted.

There is another sufficient reason why the judgment should not have been rendered in favor of the plaintiff in error; but which it is. not material to notice, as it is certain that the judgment pronounced was in accordance with the true construction of the statute.

Judgment affirmed.